17-107904

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA
# (ST PAUL DIVISION)

_____

In Re:                                          Case No.  17-31498 WJF
                                                Chapter 13

Robert Wayne Eastlee,

      Debtor.

_____

## AMENDED NOTICE OF HEARING AND MOTION
## FOR RELIEF FROM STAY

TO:     The Debtor and other entities specified in Local Rule 9013-3(a).

1.      Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates, moves the Court for relief requested below and gives Notice of Hearing.

2.      The Court will hold a Hearing on this motion at 10:30 A.M., on February 27, 2018, in Courtroom No. 2B, at Federal Building and U.S. Courthouse, 2nd Floor, 316 N. Robert Street, St Paul, MN.

3.      Any response to this motion must be filed and delivered no later than Thursday February 22, 2018, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this Chapter 13 case was filed on May 4, 2017.  The case is now pending in this court.

5.      This Motion arises under 11 U.S.C. §362, 11 U.S.C §1301, and Bankruptcy Rule 4001. This motion is filed under Bankruptcy Rule 9014 and Local Rules 9013-1 - 9019-1(d).  Movant Requests Relief with respect to exempt real property of the Debtor.

6.      On August 25, 2005, Debtor, Robert Wayne Eastlee and Co-debtor, Troy Allen Eastlee made, executed and delivered to New Century Mortgage Corporation, a California Corporation, an adjustable rate Note (hereinafter referred to as the "Note"), in the original principal amount of $139,200.00 bearing interest from the date thereof at the rate of 6.962% per annum, payable in

monthly installments of $807.60 commencing on October 1, 2005 and on the first day of each and every calendar month thereafter until the principal and interest were fully paid.

7.      On August 25, 2005, to secure the payment of the Note, Robert Wayne Eastlee, A Single Man and Troy Allen Eastlee, A Single Man, As Joint Tenants, made, executed, and delivered to New Century Mortgage Corporation a Mortgage (hereinafter referred to as the "Mortgage"), mortgaging and conveying certain real estate in Ramsey County, Minnesota, legally described as follows:

> Lot 12, Block 1, River Side Addition to St. Paul, Minn. According to the Recorded Plat Thereof on File and of Record in the Office of the Register of Deeds in and for Ramsey County, Minnesota.

which property has an address of:  733 Butternut Ave, Saint Paul, MN 55102.  The Mortgage was filed for record in the office of the Recorder, County of Ramsey, on September 6, 2005, as Document Number 3885710, and was subsequently assigned to Movant by assignment of Mortgage.  The terms of said Note and Mortgage were amended by the Loan Modification Agreement signed by the Debtor on August 18, 2016.

8.      The Debtor filed a plan on May 4, 2017, which was confirmed by Court Order on June 23, 2017. Thereafter, on October 17, 2017 the Debtor filed a modified post confirmation Chapter 13 plan, which was confirmed by Court Order on November 30, 2017.  The modified plan provided, among other things, that:

> "6.  **HOME MORTGAGES IN DEFAULT [§1322(b) (5) and §1322(e)]** - The trustee will cure defaults on the following claims secured only by a security interest in real property that is the Debtor's principal residence. The Debtor will pay the payments that come due after the date the petition was filed directly to the creditors.  The creditors will retain liens. **All following entries are estimates.**  The trustee will pay the actual remaining balance of amounts of default."

Notwithstanding the foregoing provisions of said plan, the Debtor has not maintained current payments with respect to said Note and Mortgage while this case is pending.  Debtor is therefore in default under the terms of the confirmed modified Chapter 13 Plan.

9.      Debtor is in arrearage for monthly payments as shown below.  The last payment received from Debtor was applied to the September, 2017 post-petition payment as that was the next payment due.  The Debtor has therefore failed to provide movant with adequate protection.  Post-petition arrearages include the following as of December 4, 2017:

| | |
|---|---|
| 3 payments @ $857.63 | $2,572.89 |
| Less Credits/Suspense Account | $(29.94) |
| TOTAL POST – PETITION | $2,542.95 |

The principal balance due Movant under the terms of the Note is $164,955.01 as of December 4, 2017, and interest accrues at the rate of 2.00032% per year.  The amount therefore due and owing on said Note as of December 4, 2017 is as follows:

| | |
|---|---:|
| Principal | $164,955.01 |
| Interest good through December 4, 2017 | $2,777.20 |
| Escrow Advance | $2,773.39 |
| Accumulated Late Charges | $117.04 |
| Property Inspection Fees | $53.00 |
| Less Credits/Suspense Account | $(29.94) |
| FC Thru Service Complete | $750.00 |
| Lis Pendens/NOPA | $50.00 |
| Process | $72.00 |
| Publication | $359.60 |
| Certified Mail Cost | $6.53 |
| FC Thru Notice of Intention | $435.00 |
| TOTAL | $172,318.83 |

10.     Debtor has represented the value of this property to be $129,600.00 on the schedules which accompanied his petition.  The current tax assessed value of the property is $129,600.00, which Movant adopts for the purposes of this Motion.  As such, there is no equity in said property.

11.     By reason of the foregoing, good cause exists to lift the automatic stay imposed by 11 USC Section 362 and codebtor stay of 11 U.S.C. Section 1301 to allow Movant to pursue its remedies under State Law.

12.     **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

Wherefore, Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates, moves the court:

1.      For an Order granting Movant relief from the stay of 11 U.S.C. Section 362 and Codebtor

stay of 11 U.S.C. Section 1301.

2.      That, notwithstanding Fed. R. Bankr. P. 4001(a)(3), the order for relief is effective

immediately upon entry.

3.      For such other and further relief as the Court finds just and proper.

Dated: January 29, 2018

Signed: /s/ Jessica L. Salyers
Lawrence P. Zielke - 152559
Kalli L. Ostlie - 0329678
Jessica L. Salyers - 0398808
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060
jsalyers@logs.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
(ST PAUL DIVISION)

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 17-31498 WJF** |
| **Robert Wayne Eastlee** | § | |
| | § | **CHAPTER 13** |
| **DEBTOR** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, _____Javier Rivera_____, declare under penalty of perjury as follows:

1.      I am employed as a _____Contract Management Coordinator_____ of Ocwen Loan Servicing, LLC and am authorized to sign this Affidavit on behalf of Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates (the "Movant"). This Affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      I make this affirmation based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan Servicing, LLC. As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen Loan Servicing, LLC that pertain to the Loan and extension of credit given to the Debtor concerning the property securing such Loan.

3.      The information in this affidavit is taken from Ocwen Loan Servicing, LLC's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by person with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4.      The Debtor, Robert Wayne Eastlee and co-signer Troy Allen Eastlee have executed and delivered or are otherwise obligated with respect to that certain promissory note referenced in the

Motion (the "Note"). The Debtor, Robert Wayne Eastlee and co-signer Troy Allen Eastlee have executed and delivered or are otherwise obligated with respect to that certain Mortgage referenced in the Motion (the "Mortgage"). Pursuant to that certain Mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor under and with respect to the Note and the Mortgage are secured by real property referenced in the Motion. A true and correct copy of the Note is attached hereto as Exhibit 1. A true and correct copy of the Mortgage and Loan Modification are attached hereto as Exhibit 2.

5.      Said Note and Mortgage are secured by real property referenced in the Motion with an address of 733 Butternut Ave, Saint Paul, MN 55102 and legally described as: Lot 12, Block 1, River Side Addition to St. Paul, Minn. According to the Recorded Plat Thereof on File and of Record in the Office of the Register of Deeds in and for Ramsey County, Minnesota.

6.      Said Mortgage and Note were subsequently assigned, transferred or acquired by Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates. A copy of the Assignment of Mortgage is attached hereto as Exhibit 3.

7.      Ocwen Loan Servicing, LLC is the authorized servicer for Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates, its successors and assigns, and has the authority to act on its behalf pursuant to the Limited Power of Attorney. Attached hereto as Exhibit 4 is said Limited Power of Attorney.

8.      As of December 4, 2017, there are one or more defaults in paying Debtor post-petition amounts due with respect to the Note.

9.      As of December 4, 2017, the unpaid principal balance of the Note is $164,955.01.

10.     The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor as of December 4, 2017:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 3 | 10/1/2017 | 12/1/2017 | $585.24 | $272.39 | $857.63 | $2,572.89 |
| Less post-petition partial payments (suspense balance): | | | | | | ($29.94) |
| | | | | | Total: | $2,542.95 |

11.     As of December 4, 2017, the total post-petition arrearage/delinquency is $2,542.95 consisting of (i) the foregoing total of missed post-petition payment in the amount of $2,542.95 plus (ii) the following post-petition fees:

| Description | Amount: |
|-------------|---------|
| N/A | N/A |

12.      The current tax-assessed value of the property is $129,600.00, which is also Movant's current estimated market value of the property.  Attached hereto as Exhibit 5 is a true and correct copy of the Ramsey County tax assessment.

13.      As of December 4, 2017, the total indebtedness to Movant was $172,318.83.  The fair market value of the Property as averred by the Debtor is approximately $129,600.00. Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, in order of priority are: (i) Movant $172,318.83.

14.    Attached hereto as Exhibit 6 is a true and correct copy of the loan history beginning on the date of default applicable to this Motion provided on Local Form 4001-1.

15.    Attached hereto as Exhibit 7 is a post-petition payment history.

Pursuant to 28 U.S.C. 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 3ʳᵈ day of January, 2018.

_____
Signature

Javier Rivera
_____
Name

Contract Management Coordinator
_____
Title

STATE OF FLORIDA
COUNTY OF PALM BEACH
The foregoing instrument was acknowledged before me this 3rd day of January, 20 18, by Javier Rivera as Contract Management Coordinator for Ocwen Loan Servicing, LLC who is the servicer for Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public
Name of Notary Public: Christian Lazu

Personally known:
Or Produced Identification:
Type of Identification Produced:

Notary Public State of Florida
Christian Lazu
My Commission FF 903931
Expires 07/27/2019

Case number: 17-31498 WJF
Debtor: Robert Wayne Eastlee

### Basis for asserting that Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates has the right to foreclose

Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for:
Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates (hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):

____ Noteholder is the owner of the note.

_X_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

____ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.

____ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.

____ Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.





# ADJUSTABLE RATE NOTE

**(LIBOR Six Month Index (as Published in *The Wall Street Journal*) - Rate Caps)**
2 YEAR RATE LOCK

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

| | | |
|---|---|---|
| **August 25, 2005** | **Saint Paul** | **Minnesota** |
| (Date) | (City) | (State) |

**733 Butternut Ave, Saint Paul, MN  55102-**

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **139,200.00** (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is **New Century Mortgage Corporation**

, a California Corporation.  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of **6.962 %**.  The interest rate I will pay may change.  The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

The interest rate I will pay may change on the first day of **September, 2007**, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  The new rate of interest will become effective on each Interest Rate Change Date in accordance with Section 4 of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

Beginning on the first day of **October 1, 2005** and on the first day of every month thereafter until the first day of **September, 2007**, I will pay only interest on the unpaid principal balance of the Note.  Thereafter, I will pay principal and interest by making payments every month until the Maturity Date, as provided below.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

My monthly payments will be applied to interest before principal.  If on **09/01/2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

NCMC
2/28 Six Month LIBOR Note

Page 1 of 5



I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612** or at a different place if required by the Note Holder.

### (B) Amount of My Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$ 807.60** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### (D) Withholding

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of September, 2007 and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date."

### (B) The Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

At each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Seven Tenth(s)** percentage points (5.700%) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

(i) **Interest-Only Period.** The "Interest-only Period" is the period from the date of this Note through **September 1, 2007** . For the Interest-only Period, the Note Holder will calculate the amount of the monthly payment to be one-twelfth (1/12th) of one (1) year's interest **6.962 %**. The result of this calculation will be the amount of my monthly payment until the next Interest Rate Change Date.

NCMC
2/28 Six Month LIBOR Note

Page 2 of 5



(ii) **Amortization Period.** The "Amortization Period" is the period after the Interest-only Period and continuing until the Maturity Date. During the Amortization Period, after calculating my new interest rate as provided in Section 4(C) above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

**(D) Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.462** % or less than **6.962** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **13.962** % nor less than **6.962%.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

NCMC
2/28 Six Month LIBOR Note

Page 3 of 5

ORIGINAL

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** or $5.00, whichever is greater of my overdue monthly payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor, and further waive all relief under any valuation and appraisement laws. "Presentment" means the right to

NCMC
2/28 Six Month LIBOR Note                    Page 4 of 5

require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. GOVERNING LAW - SECURED NOTE

This Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## CAUTION
## IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Robert Wayne Eastlee_
Robert Wayne Eastlee            - Borrower

_Troy Allen Eastlee_
Troy Allen Eastlee            - Borrower

_____            - Borrower

_____            - Borrower

_____            - Borrower

_____            - Borrower

_____            - Borrower

_____            - Borrower

(Sign Original Only)

Pay to the order of, without r_____

New Century M_____ orporation
By: _____
Diana Noriega, A.V.P. / Trailing docs

NCMC
2/28 Six Month LIBOR Note

Page 5 of 5



Prepared by: **Joe Simmons**
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: ███████████

## ALLONGE

BORROWERS: **ROBERT WAYNE EASTLEE AND TROY ALLEN EASTLEE**

PRESENTOWNER AND HOLDER: **NEW CENTURY MORTGAGE CORPORATION**

NOTE EXECUTION DATE: **AUGUST 25, 2005**

NOTE AMOUNT: **$139,200.00**

     This allonge shall be annexed to the original Note, referenced above for purposes of transferring same from the present Owner and Holder of the Note, **NEW CENTURY MORTGAGE CORPORATION** ("Transferor") as of the date set forth below. As a result of said transfer, **NEW CENTURY MORTGAGE CORPORATION** has no further interest in the Note.

     Pay to the order of

     **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES** without recourse, representation or warranty express or implied.

**NEW CENTURY MORTGAGE CORPORATION**
**BY ITS ATTORNEY IN FACT**
**OCWEN LOAN SERVICING, LLC**

By: _____
Name: Leticia N. Arias
Title:    Contract Manager

**ATTORNEY CODE:** ███████

3

Document# 3885710
Recorded 09/06/2005 1600
County Recorder, Ramsey County, MN
Mortgage Registration Tax Paid 334.08 10/14/2005

————————————[Space Above This Line For Recording Data]——————————

# MORTGAGE

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 25, 2005
together with all Riders to this document.

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3024  1/01

-6(MN) (0005).03                                      *RWE*
Page 1 of 16                    Initials: *TAE*
        VMP MORTGAGE FORMS -

1 - 20

EXHIBIT

2

**(B) "Borrower"** is Robert Wayne Eastlee, A Single Man and Troy Allen Eastlee, A Single Man, As Joint Tenants

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated August 25, 2005
The Note states that Borrower owes Lender ONE HUNDRED THIRTY-NINE THOUSAND TWO
HUNDRED AND 00/100                                                    Dollars
(U.S. $139,200.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 09/01/2035
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.

Initials: _RWE_
_TAE_

VMP-6(MN) (0005).03                Page 2 of 15                Form 3024   1/01

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                        [Type of Recording Jurisdiction]
of Ramsey                                        [Name of Recording Jurisdiction]:
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 11-28-23-44-0011                    which currently has the address of
733 Butternut Ave                                                        [Street]
Saint Paul                              [City], Minnesota 55102-        [Zip Code]
("Property Address"):

Initials: *RWE TAG*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Initials: _RW &_  _TAE_

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Initials: _RWE_ _TAE_

-6(MN) (0005).03                    Page 6 of 15                    Form 3024   1/01

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials: *RWS* *TAE*

VMP®-6(MN) (0005).03          Page 6 of 15          Form 3024   1/01

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's



Initials: 



knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

Initials: *RWE*  *TAE*

-6(MN) (0005).03                Page 8 of 15                Form 3024  1/01





Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

Initials: _RWE_
_TME_

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or, if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal

Initials: _RWE_
_TAE_

-6(MN) (0005).03                Page 10 of 15                Form 3024   1/01

owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security

Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).




Initials:

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

Initials: _RWE_ _TAE_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Robert Wayne Eastlee_____ (Seal)
                                          Robert Wayne Eastlee          -Borrower


_____          _Troy Allen Eastlee_____ (Seal)
                                          Troy Allen Eastlee            -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                 -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                 -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                 -Borrower

VMP -6(MN) (0005).03          Page 14 of 15          Form 3024   1/01

STATE OF MINNESOTA,        RAMSEY                                    County ss:

On this 25ᵗʰ      day of   August 2005            , before me appeared

Robert Wayne Eastlee and Troy Allen Eastlee ,
to me personally known to be the person(s) described in and who executed the foregoing instrument and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

Nathan J Krogh
Notary Public
My Commission Expires: 1-31-2010



NATHAN J. KROGH
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

This instrument was drafted by:
New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Tax statements for the real property described in this instrument should be sent to:
Robert Wayne Eastlee
733 Butternut Ave
Saint Paul, MN  55102-

RWE
Initials: TAE

-6(MN) (0005).03                 Page 15 of 15                 Form 3024  1/01

# PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

This Prepayment Rider is made this **25th**      day of **August**      **2005**      , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                    (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

Except as provided below, I may make a full prepayment or a partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase. I may make a full prepayment at any time. However, if within **24** MONTHS from the execution of the Security Instrument, I make a full prepayment, I will pay a prepayment charge in an amount equal to the lesser of two (2) percent of the unpaid principal balance or 60 days interest on the unpaid principal balance. I shall not be charged a prepayment penalty for any partial prepayment. In the event full prepayment is made upon the sale of my primary residence, I shall not be charged a prepayment penalty.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Robert Wayne Eastlee_ _____        _Troy Allen Eastlee_ _____

**Robert Wayne Eastlee**                                    **Troy Allen Eastlee**

_____                        _____

_____                        _____

_____                        _____

NCMC
Prepay Rider - ARM (MN)                             Page 1 of 1

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)
### 2 YEAR RATE LOCK

THIS ADJUSTABLE RATE RIDER is made this 25th      day of **August, 2005**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to
**New Century Mortgage Corporation**
("Lender") of the same date and covering the property described in the Security Instrument and located at:

**733 Butternut Ave, Saint Paul, MN  55102-**
(Property Address)

### THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
### RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE
### BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of             **6.962 %**. The Note provides for
changes in the interest rate and monthly payments as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**
The interest rate I will pay may change on the first day of  **September, 2007**
and on the same day of every 6th month thereafter. Each date on which my interest rate could change is
called an "Interest Rate Change Date."

**(B)  The Index**
Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a
margin. The "Index" is the average of interbank offered rates for six month dollar deposits in the London
market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index
figure available as of the first business day of the month immediately preceding the month in which the
Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information. The Note Holder will give me notice of this choice.

NCMC
2/28 Six Month LIBOR Adjustable Rate Rider
                                    Page 1 of 3

**(C) Calculation of Changes**

At each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Seven Tenth(s)** percentage points ( **5.700%** ) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

> **(i) Interest-Only Period.** The "Interest-only Period" is the period from the date of this Note through **September 1, 2007**. For the Interest-only Period, the Note Holder will calculate the amount of the monthly payment to be one-twelfth (1/12th) of one (1) year's interest at **6.962** % per annum. The result of this calculation will be the amount of my monthly payment until the Interest Rate Change Date.

> **(ii) Amortization Period.** The "Amortization Period" is the period after the Interest-only Period and continuing until the Maturity Date. During the Amortization Period, after calculating my new interest rate as provided in Section 4(C) above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

**(D) Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.462%** or less than **6.962%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **13.962** % nor less than **6.962** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**11. GOVERNING LAW - SECURED NOTE**

The Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located. In addition to the protections given to the Note Holder under the Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under the Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


_Robert Wayne Eastlee_
_____
**Robert Wayne Eastlee**                    -Borrower

_Troy Allen Eastlee_
_____
**Troy Allen Eastlee**                    -Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

*(Sign Original Only)*

NCMC
2/28 Six Month LIBOR Adjustable Rate Rider
Page 3 of 3

LOT 12, BLOCK 1, RIVER SIDE ADDITION TO ST. PAUL, MINN. ACCORDING TO
THE RECORDED PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE
REGISTER OF DEEDS IN AND FOR RAMSEY COUNTY, MINNESOTA

Loan Number: ███████
Investor Loan Number ███████████

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
**ATTN: Mortgage Assistance**
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

## (Providing for Fixed Interest Rate)

### BALLOON PAYMENT DISCLOSURE

THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF BORROWER MAKES ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, BORROWER WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* - LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE BORROWER A NEW LOAN ON THE MATURITY DATE. IF BORROWER DOES NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, BORROWER MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES BORROWER A NEW LOAN ON THE MATURITY DATE, BORROWER WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF BORROWER IS UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, BORROWER MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

Page 1

This Loan Modification Agreement ("Agreement"), made this 11 day of Aug, 2016, between Robert Wayne Eastlee , Troy Allen Eastlee ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) The Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated 08/25/2005 and recorded in the Records of RAMSEY County, MN and (2) The Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

733 Butternut Ave Saint Paul, MN 55102-4103

The real property described being set forth as follows:

**(Legal Description Attached if Applicable for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 09/01/2016, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $166,498.63, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the New Principal Balance, plus interest, to the order of Lender. Interest will be charged on the New Principal Balance at the yearly rate of 2.00032%, from 09/01/2016. Borrower promises to make monthly payments of principal and interest of U.S. $585.24, beginning on 10/01/2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $260.91. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law. The yearly rate of 2.00032% will remain in effect until principal and interest are paid in full. If on 10/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that

Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) All terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) Name, address, and telephone number, (ii) Social Security Number, (iii) Credit score, (iv) Income, (v) Payment history, (vi) Account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Page 3

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging.

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) Taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) Leasehold payments or ground rents on the Property, if any; (c) Premiums for any and all insurance required by Lender under the Loan Documents; (d) Mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) Any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Severability: Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

## BORROWER ACKNOWLEDGEMENT

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

| 8/18/16 | Robert W. Smith |
| --- | --- |
| Date | Robert Wayne Eastlee |
| 8-18-16 | |
| Date | Troy Allen Eastlee |

Page 6

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Robert Wayne Eastlee , Troy Allen Eastlee

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 08/25/2005

Loan Number: ▮▮▮▮▮▮▮

Property Address: 733 Butternut Ave Saint Paul, MN 55102-4103

THIS BALLOON PAYMENT DISCLOSURE is made this 11 day of Aug, 2016, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 10/01/2016 up to | - NO ADJUSTMENT |
| up to | |
| up to | |
| up to 10/01/2035 | $80,784.50 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $80,784.50 WILL BE DUE AND PAYABLE IN FULL ON 10/01/2035, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 229 months from the effective date of the modification.

IF I CANNOT PAY THE BALLOON PAYMENT WHEN DUE, I MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR I MAY LOSE MY PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, I WILL CONSIDER MY ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. IN ADDITION, THE VALUE OF THE REAL ESTATE SECURING THIS LOAN MAY CHANGE DURING THE TERM OF THE LOAN. ON THE DATE THE BALLOON PAYMENT BECOMES DUE, THE VALUE OF THE REAL ESTATE MAY NOT BE SUFFICIENT TO SECURE A NEW LOAN IN AN AMOUNT EQUAL TO THE BALLOON PAYMENT.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/WE HAVE READ THE ABOVE DISCLOSURE AND ACKNOWLEDGE RECEIVING A COPY BY SIGNING BELOW.

*ALL INDIVIDUALS ON THE TITLE (EVEN IF NOT A BORROWER ON THE NOTE) MUST SIGN THIS AGREEMENT. IF THERE ARE MORE THAN TWO TITLE HOLDERS TO THIS PROPERTY, PLEASE HAVE THEM SIGN BELOW.

| 8/18/16 | Robert W. Eastlee |
|---------|-------------------|
| Date    | Robert Wayne Eastlee |
| 8-18-16 | |
| Date    | Troy Allen Eastlee |

## LENDER ACKNOWLEDGEMENT
### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Loan Servicing

_____    _____
Authorized Officer    Desmond Cummings

_____    _____
Date      SEP 2 3 2016

Document# 3969966
Recorded 08/11/2006 1200
County Recorder, Ramsey County, MN

(RESERVED FOR RECORDING DATA)

Prepared By:  PRATIMA SHETTY
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
LOAN NUMBER:
Attorney Code:

## ASSIGNMENT OF MORTGAGE
### MINNESOTA

This **ASSIGNMENT OF MORTGAGE** is made and entered into as of the 1ST day of AUGUST  , 2006  from **NEW CENTURY MORTGAGE CORPORATION** , whose address is C/O Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409 ("Assignor") to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES** , whose address is C/O Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409  ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the County Recorder of RAMSEY County, State of **Minnesota**, as follows:

That certain promissory note or obligation dated **AUGUST 25, 2005** in the principal amount of **$ 139,200.00** executed by **ROBERT WAYNE EASTLEE AND TROY ALLEN EASTLEE**  (Mortgagor), and more fully described or referred to in a mortgage of even date  therewith  to  **NEW  CENTURY  MORTGAGE  CORPORATION**   (Mortgagee)  and  filed  of  record  on 9/6/05                , Instrument:  3805710

PREMISES KNOWN AS: **733 BUTTERNUT AVE , SAINT PAUL, MN**

PREMISES DESCRIBED AS:
LEGAL DESCRIPTION

**LOT 12, BLOCK 1, RIVER SIDE ADDITION TO ST. PAUL, MINN. ACCORDING TO THE RECORDED PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE REGISTER OF DEEDS IN AND FOR RAMSEY COUNTY, MINNESOTA**

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.
This Assignment is made without recourse, representation or warranty.

DATED: AUGUST  01, 2006 .

**NEW CENTURY MORTGAGE CORPORATION**
**By its Attorney-In-Fact**
**Ocwen Loan Servicing, LLC**

BY:     Scott Anderson
TITLE:  Sr. Vice President

STATE OF FLORIDA            )
                            )ss
COUNTY OF PALM BEACH        )

P.O.A. Recorded on: **JANUARY 13, 2006**
Instrument number: 1947755

The foregoing instrument was acknowledged before me on this 1ST day of AUGUST  , 2006 , by Scott Anderson, who is the Sr. Vice President of Ocwen Loan Servicing, LLC, a limited liability company, By its **Attorney-In-Fact** for  NEW CENTURY MORTGAGE CORPORATION .  Scott Anderson is personally known to me.

Witness my hand and official seal.

Notary Public

NOTARIAL SEAL OR STAMP

Notary Public State of Florida
Noemi Morales
My Commission
Expires 10/05/2009

*Return to:*
*Shapiro*

804                        1-1

**EXHIBIT**
3



Document# 4386839
Recorded 02/21/2013 1100
County Recorder, Ramsey County, MN

(RESERVED FOR RECORDING DATA)

APN#

Prepared By: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835

Attorney Code

## ASSIGNMENT OF MORTGAGE
## MINNESOTA

This **ASSIGNMENT OF MORTGAGE** from **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES**, whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES**, whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the County Recorder of RAMSEY County, State of **Minnesota**, as follows:

That certain promissory note or obligation dated **AUGUST 25, 2005** in the principal amount of **$ 139,200.00** executed by **ROBERT WAYNE EASTLEE AND TROY ALLEN EASTLEE** (Mortgagor), and more fully described or referred to in a mortgage of even date therewith to **NEW CENTURY MORTGAGE CORPORATION** (Mortgagee) and filed of record on **SEPTEMBER 06, 2005, Instrument: 3885710**

PREMISES KNOWN AS: **733 BUTTERNUT AVE, SAINT PAUL, MN 55102**
PREMISES DESCRIBED AS:
LEGAL DESCRIPTION:

**LOT 12, BLOCK 1, RIVER SIDE ADDITION TO ST. PAUL, MINN. ACCORDING TO THE RECORDED PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE REGISTER OF DEEDS IN AND FOR RAMSEY COUNTY, MINNESOTA**

This Assignment is made without recourse, representation or warranty.

DATED: FEBRUARY 04, 2013
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES**
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC.

BY: _____ Leticia N. Arias
TITLE: Contract Manager

STATE OF FLORIDA        )
                        )ss
COUNTY OF PALM BEACH    )

The foregoing instrument was acknowledged before me on this 4TH day of FEBRUARY, 2013, by Leticia N. Arias, who is the Contract Manager at Ocwen Loan Servicing, LLC Attorney-in-Fact for **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2005-B, ASSET BACKED PASS-THROUGH CERTIFICATES.** Leticia N. Arias is personally known to me.

Witness my hand and official seal.

Notary Public _____
        **Stephanie Simpson**

NOTARIAL SEAL OR STAMP

Notary Public State of Florida
Stephanie Simpson
My Commission
Expires 10/21/2016

CFN ████████████
OR BK 26565 PG 0135
RECORDED 01/17/2014 10:59:45
Palm Beach County, Florida
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0135 - 149; (15pgs)

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") pursuant to Agreements listed on Exhibit "A" attached hereto (the "Agreements"), hereby constitutes and appoints the Servicer, by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Ocwen Loan Servicing, LLC is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1.  The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2.  The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.  The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.  The completion of loan assumption agreements.

5.  The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

When Recorded Mail To:   GS
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236



EXHIBIT
4

6.    The assignment of any Mortgage or Deed of Trust and the related Mortgage Note,
in connection with the repurchase of the mortgage loan secured and evidenced
thereby.

7.    The full assignment of a Mortgage or Deed of Trust upon payment and discharge
of all sums secured thereby in conjunction with the refinancing thereof, including,
without limitation, the assignment of the related Mortgage Note.

8.    The full enforcement of and preservation of the Trustee's interests in the
Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by
way of, including but not limited to, foreclosure, the taking of a deed in lieu of
foreclosure, or the completion of judicial or non-judicial foreclosure or the
termination, cancellation or rescission of any such foreclosure, the initiation,
prosecution and completion of eviction actions or proceedings with respect to, or
the termination, cancellation or rescission of any such eviction actions or
proceedings, and the pursuit of title insurance, hazard insurance and claims in
bankruptcy proceedings, including, without limitation, any and all of the
following acts:

a.    the substitution of trustee(s) serving under a Deed of Trust, in accordance
with state law and the Deed of Trust;

b.    the preparation and issuance of statements of breach or non-performance;

c.    the preparation and filing of notices of default and/or notices of sale;

d.    the cancellation/rescission of notices of default and/or notices of sale;

e.    the taking of deed in lieu of foreclosure;

f.    the filing, prosecution and defense of claims, and to appear on behalf of
the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or
Deeds of Trust;

g.    the preparation and service of notices to quit and all other documents
necessary to initiate, prosecute and complete eviction actions or
proceedings;

h.    the tendering, filing, prosecution and defense, as applicable, of hazard
insurance and title insurance claims, including but not limited to appearing
on behalf of the Trustee in quiet title actions; and

i.    the preparation and execution of such other documents and performance of
such other actions as may be necessary under the terms of the Mortgage,
Deed of Trust or state law to expeditiously complete said transactions in
paragraphs 8.a. through 8.h. above.

2

9.    With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a.    listing agreements;

    b.    purchase and sale agreements;

    c.    grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

    d.    escrow instructions; and

    e.    any and all documents necessary to effect the transfer of property.

10.    The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of **January 14, 2014.**

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the re] Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or

3

nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the affixed Agreements listed on the Exhibit "A", has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 14th day of January 2014.

Deutsche Bank National Trust Company, as Trustee

By: _____
Name: Ronaldo Reyes
Title: Vice President

Witness: Jenny Pilapil

Witness: Imelda Santos

Prepared by:

Name: Tim Avakian
Title: Trust Administrator

Address:        Deutsche Bank National Trust Company
                1761 E. Saint Andrew Place
                Santa Ana, CA 92705

4

State of California}
County of Orange}


On **January 14, 2014** before me, **Sammi McKoy**, Notary Public, personally appeared **Ronaldo Reyes**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that **he** executed the same in **his** authorized capacity and that by **his** signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.


I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.


Witness my hand and official seal.

SAMMI S. MCKOY
Commission #
Notary Public - California
Los Angeles County
My Comm. Expires Oct 17, 2017

Notary signature

5

Book26565/Page139                              Page 5 of 15

## Exhibit A

**Agreement**
Pooling and Servicing Agreement Dated as of February 1, 2005 among GS Mortgage Securities
Corp., as depositor, NC Capital Corporation, as Responsible Party, Ocwen Loan Servicing, LLC
as successor in interest to Litton Loan Servicing LP, as Servicer, New Century Mortgage
Corporation, as Servicer and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2005-NC1 Mortgage Pass-Through Certificates, Series 2005-NC1

**Agreement**
Pooling and Servicing Agreement Dated as of March 1, 2005 among GS Mortgage Securities
Corp., as Depositor, NC Capital Corporation, as Responsible Party, Wilshire Credit Corporation,
as servicer, Deutsche Bank National Trust Company, as Trustee and Wachovia Bank National
Association, as Co-Trustee
**Trust**
GSAMP Trust 2005-S1 Mortgage Pass-Through Certificates, Series 2005-S1

**Agreement**
Pooling and Servicing Agreement Dated as of May 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Long Beach Mortgage Company, as Master Servicer and Responsible Party,
Deutsche Bank National Trust Company, as Trustee, and Wachovia Bank National Association,
as Co-Trustee
**Trust**
GSAMP Trust 2005-S2 Mortgage Pass-Through Certificates, Series 2005-S2

**Agreement**
Pooling and Servicing Agreement Dated as of March 1, 2006 among GS Mortgage Securities
Corp., as Depositor, NC Capital Corporation, as Responsible Party, Ocwen Loan Servicing,
LLC, as Servicer and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2006-S2 Mortgage Pass-Through Certificates, Series 2006-S2

**Agreement**
Pooling and Servicing Agreement Dated as of October 1, 2004 among GS Mortgage Securities
Corp., as Depositor, Ocwen Loan Servicing, LLC, as successor in interest to Litton Loan

6

Servicing LP, as Servicer, New Century Mortgage Corporation, as Servicer, NC Capital
Corporation, as Responsible Party  and Deutsche Bank National Trust Company as Trustee
**Trust**
GSAMP Trust 2004-NC2, Mortgage Pass-Through Certificates, Series 2004-NC2

**Agreement**
Pooling and Servicing Agreement Dated as of May 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Ocwen Federal Bank FSB., as Servicer and Deutsche Bank National Trust
Company as Trustee
**Trust**
GSAMP Trust 2005-S2, Mortgage Pass-Through Certificates, Series 2005-S2

**Agreement**
Pooling and Servicing Agreement Dated as of January 1, 2005 among GS Mortgage Securities
Corp, as Depositor, Ocwen Federal Bank FSB, as Servicer, Ameriquest Mortgage Company , as
Responsible Party and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2005-SD1 Mortgage Pass-Through Certificates, Series 2005-SD1

**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2006 among GS Mortgage Securities
Corp., as Depositor, Wells Fargo Bank, N.A., as Group I Master Servicer, Ocwen Loan
Servicing, LLC, as Group I Servicer and Deutsche Bank National Trust Company, as Trustee
and Supplemental Interest Trust Trustee
**Trust**
GSAA Home Equity Trust 2006-S1 Mortgage Pass-Through Certificates, Series 2006-S1

**Agreement**
Pooling and Servicing Agreement dated as of September 1, 2005 among GS Mortgage Securities
Corp., as Depositor, JPMorgan Chase Bank, National Association, as Master Servicer, Ocwen
Loan Servicing, LLC, as Servicer and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2005-SEA2 Mortgage Pass-Through Certificates, Series 2005-SEA2

**Agreement**
Pooling and Servicing Agreement dated as of November 1, 2005 among GS Mortgage Securities
Corp.,as Depositor, J.P. Morgan Trust Company, National Association, as Custodian, Ocwen
Loan Servicing, LLC, as successor in interest to Litton Loan Servicing LP, as Servicer and
Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2005-HE5 Mortgage Pass Through Certificates, Series 2005-HE5

7

**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Wells Fargo Bank, N.A., as Custodian, Ocwen Loan Servicing, LLC, as
successor in interest to Litton Loan Servicing LP, as Servicer and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSAMP Trust 2005-WMC3 Mortgage Pass-Through Certificates, Series 2005-WMC3

**Agreement**
Pooling and Servicing Agreement dated as of January 1, 2006 among GS Mortgage Securities
Corp., as Depositor, J.P. Morgan Trust Company, National Association, as Custodian, U.S. Bank
National Association, as Custodian, Ocwen Loan Servicing, LLC, as successor in interest to
Litton Loan Servicing LP, as Servicer and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2006-HE1 Mortgage Pass-Through Certificates, Series 2006-HE1

**Agreement**
Pooling and Servicing Agreement, dated as of February 1, 2007 among GS Mortgage Securities
Corp., as Depositor, Avelo Mortgage, L.L.C., as a servicer, Specialized Loan Servicing LLC, as
Servicer, Ocwen Loan Servicing, LLC, as a Servicer, Wells Fargo Bank, National Association,
as master servicer, U.S. Bank National Association, as a Custodian and Deutsche Bank National
Trust Company, as Trustee
**Trust**
GSAA Home Equity Trust 2007-S1 Mortgage Pass-Through Certificates, Series 2007-S1

**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2006 among GS Mortgage Securities
Corp., as Depositor, Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator,
Ocwen Loan Servicing, LLC, as successor in interest to Litton Loan Servicing LP, as successor
in interest to Fremont Investment & Loan, as Servicer and Responsible Party and Deutsche Bank
National Trust Company, as Trustee
**Trust**
GSAMP Trust 2006-FM3 Mortgage Pass-Through Certificates, Series 2006-FM3

**Agreement**
Pooling and Servicing Agreement Dated as of May 1, 2006 among GS Mortgage Securities
Corp, as Depositor, Ocwen Loan Servicing, LLC, as Servicer and Deutsche Bank National
Trust Company, as Trustee
**Trust**
GSAMP Trust 2006-SD2 Mortgage Pass-Through Certificates, Series 2006-SD2

8

**Agreement**
Pooling and Servicing Agreement Dated as of February 1, 2003 among GS Mortgage Securities
Corp., as Depositor, Ocwen Loan Servicing, LLC, as successor in interest to Litton Loan
Servicing LP, as Servicer, NC Capital Corporation, as Responsible Party, and Deutsche Bank
National Trust Company, as Trustee
**Trust**
GSAMP Trust 2003-NC1, Mortgage Pass-Through Certificates, Series 2003-NC1

**Agreement**
Pooling and Servicing Agreement dated as of November 1, 2002 by and among GS Mortgage
Securities Corp., as depositor, and Ocwen Loan Servicing, LLC, as servicer (the "Servicer"),
WMC Mortgage Corp., as Responsible Party and Deutsche Bank National Trust Company as
trustee (the "Trustee").
**Trust**
GSAMP Trust 2002-HE, Mortgage Pass Through Certificates, Series 2002-HE

**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2002 by and among GS Mortgage
Securities Corp., as depositor, and Ocwen Loan Servicing, LLC, as successor in interest to Litton
Loan Servicing LP, as servicer (the "Servicer") and Deutsche Bank National Trust Company as
trustee (the "Trustee").
**Trust**
GSAMP Trust 2002-HE2, Mortgage Pass Through Certificates, Series 2002-HE2

**Agreement**
Pooling and Servicing Agreement dated as of March 1, 2003, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Federal Bank FSB, as Servicer, Fremont Investment &
Loan, as Responsible Party and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2003-FM1, Mortgage Pass Through Certificates, Series 2003-FM1

**Agreement**
Pooling and Servicing Agreement dated as of May 1, 2003, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Federal Bank FSB, as Servicer, Fremont Investment &
Loan, as Responsible Party, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2003-HE1, Mortgage Pass Through Certificates, Series 2003-HE1

9

**Agreement**
Pooling and Servicing Agreement dated as of July 1, 2002, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Federal Bank FSB, as Servicer, NC Capital Corporation,
as Responsible Party  and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2002-NC1,  Mortgage Pass Through Certificates, Series 2002-NC1

**Agreement**
Pooling and Servicing Agreement dated as of April 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Federal Bank FSB, as Servicer,  Ocwen Loan Servicing,
LLC as successor in interest to Chase Manhattan Mortgage Corporation, as Servicer and
Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2004-HE1,  Mortgage Pass Through Certificates, Series 2004-HE1

**Agreement**
Pooling and Servicing Agreement dated as of July 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor (the "Depositor"), Ocwen Federal Bank FSB, as Servicer, Chase
Manhattan Mortgage Corporation, as Servicer and Deutsche Bank National Trust Company, as
Trustee
**Trust**
GSAMP Trust 2004-HE2,  Mortgage Pass Through Certificates, Series 2004-HE2

**Agreement**
Pooling and Servicing Agreement dated as of May 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC  as successor in interest to
JPMorgan Chase Bank, National Association, successor by merger to Chase Home Finance,
LLC, successor by merger to Chase Manhattan Mortgage Corporation, as Servicer, Countrywide
Home Loans Servicing LP, as Servicer and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAA Trust 2004-3,  Mortgage Pass Through Certificates, Series 2004-3

**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest JPMorgan
Chase Bank, National Association, successor by merger to Chase Home Finance, LLC, successor
by merger to Chase Manhattan Mortgage Corporation, as Servicer, Countrywide Home Loans
Servicing LP, as Servicer, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAA Trust 2004-OPT,  Mortgage Pass Through Certificates, Series 2004-OPT

10

**Agreement**
Pooling and Servicing Agreement dated as of June 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest to Ocwen
Loan Servicing, LLC, as successor in interest to JPMorgan Chase Bank, National Association,
successor by merger to Chase Home Finance, LLC, successor by merger to Chase Manhattan
Mortgage Corporation, as Servicer, Countrywide Home Loans Servicing LP, as Servicer, and
Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAA Trust 2004-5,  Mortgage Pass Through Certificates, Series 2004-5


**Agreement**
Pooling and Servicing Agreement dated as of June 1, 2006, by and among GS Mortgage
Securities Corp., as Depositor, Indymac Bank, F.S.B, as Servicer, American Home Mortgage
Servicing, Inc., as Servicer, Ocwen Loan Servicing, LLC, as Servicer, Wells Fargo Bank, N.A.,
as Master Servicer and Securities Administrator and Deutsche Bank National Trust Company, as
Trustee
**Trust**
GSAMP  Trust 2006-4S,  Mortgage Pass Through Certificates, Series 2006-S4


**Agreement**
Pooling and Servicing Agreement dated as of May 1, 2006, by and among GS Mortgage
Securities Corp., as Depositor, JPMorgan Chase Bank, National Association, as Master Servicer
and Securities Administrator, Ocwen Loan Servicing, LLC, as Servicer (the "Servicer"), Avelo
Mortgage, L.L.C., as Servicer, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP  Trust 2006-SEA1,  Mortgage Pass Through Certificates, Series 2006-SEA1


**Agreement**
Pooling and Servicing Agreement dated as of March 1, 2007, by and among GS Mortgage
Securities Corp., as Depositor (the "Depositor"), JPMorgan Chase Bank, National Association,
as Master Servicer, The Bank of New York, as Securities Administrator, Ocwen Loan Servicing,
LLC, as Servicer, Wells Fargo Bank, N.A., as Custodian and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSRPM Mortgage Loan Trust 2007-1, Mortgage Pass Through Certificates, Series 2007-1


**Agreement**
Pooling and Servicing Agreement dated as of January 1, 2007, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest to Litton
Loan Servicing LP as successor in interest to Fremont Investment & Loan, as Servicer and

11

Responsible Party, Wells Fargo Bank, N.A., Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company, as Trustee

**Trust**
GSAMP Trust 2004-AHL, Mortgage Pass Through Certificates, Series 2004-AHL


**Agreement**
Pooling and Servicing Agreement dated as of February 1, 2007, by and among GS Mortgage Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest to Litton Loan Servicing LP as successor in interest to Fremont Investment & Loan, Servicer (the "Servicer") and Responsible Party, Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**
GSAMP Trust 2007-FM2, Mortgage Pass Through Certificates, Series 2007-FM2


**Agreement**
Pooling and Servicing Agreement dated as of March 1, 2005 by and among GS Mortgage Securities Corp., as Depositor, JP Morgan Chase Bank, National Association, as Master Servicer, Ocwen Federal Bank, FSB, as Servicer and Deutsche Bank National Trust Company, as Trustee.

**Trust**
GSAMP Trust 2005-SEA1, Mortgage Pass-Through Certificates, Series 2005-SEA1


**Agreement**
Pooling and Servicing Agreement dated as of December 1, 2005 by and among GS Mortgage Securities Corp., as Depositor, Ocwen Loan Servicing, LLC, as Servicer and Deutsche Bank National Trust Company, as Trustee

**Trust**
GSAMP Trust 2006-SD1, Mortgage Pass-Through Certificates, Series 2006-SD1


**Agreement**
Pooling and Servicing Agreement dated as of October 1, 2006 by and among GS Mortgage Securities Corp., as Depositor, Ocwen Loan Servicing, LLC, as Servicer and Deutsche Bank National Trust Company, as Trustee

**Trust**
GSAMP Trust 2006- S6, Mortgage Pass-Through Certificates, Series 2006-S6


**Agreement**
Pooling and Servicing Agreement dated as of April 1, 2006 by and among GS Mortgage Securities Corp., as Depositor, Ocwen Loan Servicing, LLC, as Servicer, JP Morgan Trust Company, National Association, Wells Fargo Bank, N.A., U.S. Bank National Association, as Custodian and Deutsche Bank National Trust Company, as Trustee and Custodian

12

**Trust**
GSAMP Trust 2006-S3, Mortgage Pass-Through Certificates, Series 2006-S3

**Agreement**
Pooling and Servicing Agreement dated as of August 1, 2007 by and among GS Mortgage
Securities Corp., as Depositor, Avelo Mortgage, L.L.C., as Servicer, HSBC Mortgage Services
Inc., as Responsible Party, Clayton Fixed Income Services Inc., as Credit Risk Manager, Wells
Fargo Bank, N.A. as Master Servicer and Securities Administrator and Deutsche Bank National
Trust Company, as Trustee
**Trust**
GSAMP Trust 2007-HSBC1, Mortgage Pass-Through Certificates, Series 2007-HSBC1

**Agreement**
Pooling and Servicing Agreement dated as of August 1, 2006 by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC, as Servicer, U.S. Bank National
Association, as Custodian and Deutsche Bank National Trust Company, as Trustee and
Custodian
**Trust**
GSAMP Trust 2006- S5, Mortgage Pass-Through Certificates, Series 2006-S5

**Agreement**
Pooling and Servicing Agreement dated December 1, 2006  by and between the Trustee, GS
Mortgage Securities Corp., as Depositor,  JPMorgan Chase Bank, National Association, as
Master Servicer The Bank of New York, as Securities Administrator, Ocwen Loan Servicing,
LLC and Avelo Mortgage, L.L.C, as Servicer and Deutsche Bank National Trust Company, as
Trustee for GSAMP Trust 2007-SEA1 Mortgage Pass-Through Certificates, Series 2007-SEA1
**Trust**
GSAMP Trust 2007-SEA1 Mortgage Pass-Through Certificates, Series 2007-SEA1

**Agreement**
Pooling and Servicing Agreement dated as of October 1, 2004, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest to Litton
Loan Servicing LP, as Servicer (the "Servicer"), Accredited Home Lenders, Inc., as Responsible
Party, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2004-AHL, Mortgage Pass Through Certificates, Series 2004-AHL

**Agreement**
Pooling and Servicing Agreement dated as of January 1, 2005, by and among GS Mortgage
Securities Corp., as Depositor, Countrywide Home Loans Servicing LP, Ocwen Loan Servicing,
LLC  as successor in interest to JPMorgan Chase Bank, National Association, successor by

13

merger to Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage
Corporation, as Servicer, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1

**Agreement**
Pooling and Servicing Agreement Dated as of May 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Ocwen Federal Bank FSB, as Servicer and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSAMP Trust 2005-SD2 Mortgage Pass-Through Certificates, Series 2005-SD2

**Agreement**
Pooling and Servicing Agreement dated as of September 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Wells Fargo Bank, N.A., as Custodian, Ocwen Loan Servicing, LLC, as
successor in interest to Litton Loan Servicing LP, as Servicer and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSAMP Trust 2005-WMC1 Mortgage Pass-Through Certificates, Series 2005-WMC1

**Agreement**
Pooling and Servicing Agreement dated as of November 1, 2005 among GS Mortgage Securities
Corp., as Depositor, Wells Fargo Bank, N.A., as Custodian, Ocwen Loan Servicing, LLC, as
successor in interest to Litton Loan Servicing LP, as Servicer and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSAMP Trust 2005-WMC2 Mortgage Pass-Through Certificates, Series 2005-WMC2

**Agreement**
Pooling and Servicing Agreement dated as of February 1, 2006, by and among GS Mortgage
Securities Corp., as Depositor, Ocwen Loan Servicing, LLC as successor in interest to Litton
Loan Servicing LP as successor in interest to Fremont Investment & Loan, Servicer (the
"Servicer") and Responsible Party, Wells Fargo Bank, N.A., as Master Servicer and Securities
Administrator, and Deutsche Bank National Trust Company, as trustee (the "Trustee").
**Trust**
GSAMP Trust 2006-FM2, Mortgage Pass Through Certificates, Series 2006-FM2

**Agreement**
Pooling and Servicing Agreement Dated as of June 1, 2006 among GS Mortgage Securities
Corp., as depositor, NC Capital Corporation, as Responsible Party, Ocwen Loan Servicing, LLC

14

as Servicer, New Century Mortgage Corporation, as Servicer, Wells Fargo Bank, N.A., as Master
Servicer and Securities Administrator, and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSAMP Trust 2006-NC2 Mortgage Pass-Through Certificates, Series 2006-NC2


**Agreement**
Pooling and Servicing Agreement Dated as of June 1, 2006 among GS Mortgage Securities
Corp, as Depositor, Ocwen Loan Servicing, LLC, as Servicer and Deutsche Bank National Trust
Company, as Trustee
**Trust**
GSAMP Trust 2006-SD3 Mortgage Pass-Through Certificates, Series 2006-SD3


**Agreement**
Pooling and Servicing Agreement dated as of September 1, 2006, by and among GS Mortgage
Securities Corp., as Depositor (the "Depositor"), JPMorgan Chase Bank, National Association,
as Master Servicer, The Bank of New York, as Securities Administrator, Ocwen Loan Servicing,
LLC, as Servicer, Avelo Mortgage, L.L.C., as Servicer Wells Fargo Bank, N.A., as Custodian
and Deutsche Bank National Trust Company, as Trustee
**Trust**
GSRPM Mortgage Loan Trust 2006-2, Mortgage Pass Through Certificates, Series 2006-2

15

Book565/Page149                    16                    Page 15 of 15

I hereby certify that the foregoing is a true copy
of the record in my office this day, Jan 23, 2014.
Sharon R. Bock , Clerk Circuit Court, Palm Beach County, Florida
BY _____ Deputy Clerk

# RAMSEY COUNTY

## Pay Property Tax

> Pay Property Taxes

## Summary View

| | |
|---|---|
| Parcel ID | 112823440011 |
| Parcel Status | Active |
| Property Address | 733 BUTTERNUT AVE |
| | ST PAUL, MN 55102-4103 |
| Sec/Twp/Rng | 11/028/023 |
| Brief Tax Description | Lot 12 Block 1 of RIVERSIDE ADDITION |
| | LOT 12 BLK 1 |
| | (Note: Not to be used on legal documents) |
| Parcel Area | 0.11 Acres |
| Parcel Width | 40 Feet |
| Parcel Depth | 125 Feet |
| | (Note: Width and Depth represent buildable area of lot in the case of irregularly shaped lots) |
| Tax Classification | 1A-Residential Homestead |
| Roll Type | Real Property |
| Municipality | ST PAUL |
| School District | ISD #625 |
| Watershed | CAPITAL REGION W/S |
| TIF District | |
| Land Use Code | 510 R - SINGLE FAMILY DWELLING, PLATTED LOT |
| | * The Tax Classification is the Assessor Office's determination of the use of the property and is not the same as the property's zoning. |
| | * Please contact the zoning authority for information regarding zoning. |
| | * To determine whether your property is Abstract or Torrens, call 651-266-2050 |

## Taxpayers

Please refer to disclaimer at bottom of this page

| Type | Name | Address |
|---|---|---|
| Owner | Robert Wayne Eastlee | 733 Butternut Ave |
| | Troy Allen Eastlee | St Paul MN 55102-4103 |

## Current Tax Year

*Information listed is as of yesterday. For specific payoff information contact Property Tax Info at 651-266-2000

| First Half Due 05-15-2017 | | Second Half Due 10-16-2017 | |
|---|---|---|---|
| Amount Due | $1,084.00 | Amount Due | $1,084.00 |
| Penalty & Fees (thru current month) | $0.00 | Penalty & Fees (thru current month) | $0.00 |
| Sub Total | $1,084.00 | Sub Total | $1,084.00 |
| Payments Made | ($1,084.00) | Payments Made | ($1,084.00) |
| Balance Due | $0.00 | Balance Due | $0.00 |

Total Due   $0.00

## Tax Summary

| | 2017 Payable | 2016 Payable | 2015 Payable | 2014 Payable | 2013 Payable |
|---|---|---|---|---|---|
| Estimated Market Value | $129,600 | $121,000 | $111,700 | $117,600 | $123,800 |
| Taxable Market Value | $104,000 | $94,600 | $84,500 | $90,900 | $97,700 |
| + Net Tax Amount | $1,691.00 | $1,593.43 | $1,437.36 | $1,647.24 | $1,828.06 |
| + Special Assessments | $477.00 | $584.57 | $466.64 | $462.76 | $449.94 |
| = Total Taxes | $2,168.00 | $2,178.00 | $1,904.00 | $2,110.00 | $2,278.00 |
| + Penalty | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| + Interest | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| + Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| - Amount Paid | $2,168.00 | $2,178.00 | $1,904.00 | $2,110.00 | $2,278.00 |
| = Outstanding Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Special Assessments

Note: + sign indicates a multiple year assessment. Click on the + to view additional years.

| Assess # | Year | Description | Initial Amount | Principal | Interest | Installment Amount | Remaining Balance |
|---|---|---|---|---|---|---|---|
| R-011799960 | 2017 | 2017 RECYCLING & SOLID WASTE | $0.00 | $0.00 | $0.00 | $58.20 | |

EXHIBIT

5

## Local Form 4001-1
## Loan History

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|---|---|---|---|---|---|---|
| | (a) | (b) | (c) | (d) | (e) | |
| 10/1/2017 | | $585.24 | $272.39 | | | |
| 11/1/2017 | | $585.24 | $272.39 | | | |
| 12/1/2017 | | $585.24 | $272.39 | | | |
| | $29.94 | | | | | Suspense Balance |
| Total | $29.94 | $1,755.72 | $817.17 | $0.00 | $0.00 | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under note and/or mortgage and sought by Movant to resolve motion        $0.00

Current Default Amount Claimed in the Motion        $2,542.95

Escrow Advance (amounts held for payment of taxes, insurance, etc.)        $2,773.39

Suspense Account Balance (amount of unapplied payments)        -$29.94


EXHIBIT
6

| Name: | Robert Wayne Eastlee | | | | Completed By: | vapoorva |
|---|---|---|---|---|---|---|
| BK Case Number: | 17-31498 | | | | | |
| Filing Date: | 5/4/2017 | | | | | |
| Post First Due: | 6/1/2017 | | | | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
| 6/1/2017 | 6/2/2017 | $ 887.57 | $ 857.63 | 29.94 | $ 29.94 | |
| 7/1/2017 | 9/15/2017 | $ 857.63 | $ 857.63 | - | $ 29.94 | |
| 8/1/2017 | 10/17/2017 | $ 857.63 | $ 857.63 | - | $ 29.94 | |
| 9/1/2017 | 11/17/2017 | $ 857.63 | $ 857.63 | - | $ 29.94 | |



EXHIBIT

7

tabbies

| Name: | Robert Wayne Eastlee | | | | | |
|---|---|---|---|---|---|---|
| BK Case Number: | 17-31498 | | | | | |
| Filing Date: | 5/4/2017 | | | | | |
| Completed by: | vapoorva | | | | | |
| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
| 10/1/2017 | $     857.63 | $  313.91 | $ 271.33 | $ 272.39 | $            - | |
| 11/1/2017 | $     857.63 | $  314.43 | $ 270.81 | $ 272.39 | $            - | |
| 12/1/2017 | $     857.63 | $  314.96 | $ 270.28 | $ 272.39 | $            - | |
| Total Due | $  2,572.89 | $  943.30 | $ 812.42 | $ 817.17 | $            - | |

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
(ST PAUL DIVISION)**
_____

In Re:                                          Case No. 17-31498 WJF
                                                Chapter 13

**Robert Wayne Eastlee,**

        Debtor.

_____

**MEMORANDUM OF LAW**

        Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan

Trust, Series 2005-B, Asset Backed Pass-Through Certificates ("Movant"), submits this

memorandum of law in support of its motion for relief from the stays in the above-entitled

matter.

PROCEDURAL HISTORY

        This Chapter 13 case was filed by the Debtor on May 4, 2017.  The Debtor listed the

property in schedule D with a value of $129,600.00.  The Debtor claimed the property exempt

pursuant to 11 U.S.C. § 522(d)(1).  The Debtor filed a plan on May 4, 2017, which was

confirmed by Court Order on June 23, 2017. Thereafter, on October 17, 2017 the Debtor filed a

modified post confirmation Chapter 13 plan, which was confirmed by Court Order on November

30, 2017.

FACTS

        The Debtor, Robert Wayne Eastlee and Co-debtor, Troy Allen Eastlee, executed a Note

and Mortgage in favor of New Century Mortgage Corporation, a California Corporation on or

about August 25, 2005, in the amount of $139,200.00.  [Affidavit in Support of Motion for

Relief from Stay at ¶ 4; Ex. 1, 2].  The terms of said Note and Mortgage were amended by the

Loan Modification Agreement signed by the Debtor on August 18, 2016. [Id.].  Said Mortgage

was subsequently assigned to Deutsche Bank National Trust Company, as Trustee for the

Registered Holders of New Century Home Equity Loan Trust, Series 2005-B, Asset Backed

Pass-Through Certificates by assignment filed on August 11, 2006 as Document No. 3969966,

and said Mortgage was subsequently assigned to Deutsche Bank National Trust Company, as

Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through

Certificates by assignment filed on February 21, 2013 as Document No. 4386839.  [Affidavit in

Support of Motion for Relief from Stay at ¶ 6; Ex. 3].

As of December 4, 2017, the Debtor has failed to make the post-petition payments due

under the terms of the note and mortgage for the months of October 1, 2017 through December

1, 2017.  [Affidavit in Support of Motion for Relief from Stay at ¶¶ 10, 11, 14, 15; Ex. 6, 7].  As

of December 4, 2017, the total indebtedness due to Movant was $172,318.83.  [Affidavit in

Support of Motion for Relief from Stay at ¶ 13].  Accordingly, the Debtor is in default under the

terms of the Mortgage and confirmed plan for failure to make timely payments.

<u>ARGUMENT</u>

I.        <u>Standing to Bring a Motion</u>

Under Section 362 (a) of the Bankruptcy Code, relief from the automatic stay is

authorized "on request of a party in interest and after notice and hearing..." 11 U.S.C. 362 (d).  In

essence, under the Bankruptcy Code, the party seeking relief from stay must establish

entitlement to that relief.  11 U.S.C. 362 (d); <u>see</u> <u>In re Hayes</u>, 393 B.R. 259, 266-267 (Bankr. D.

Mass. 2008).

Some courts have recently found that in order to achieve the standing requirement and

demonstrate that the Movant is the "real party in interest", they must provide "evidence tracing

the identity of the various holders and servicers of the mortgage or deed in trust in question."

see; In re Sheridan, No. 08-20381, 2009 WL 631355 at 4-5 (Bankr. D. Idaho March 12, 2009);

In re Jacobson, No. 08-45120, 2009 WL 567188 at 5-6 (Bankr. W.D. Wash. Mar. 6, 2009);

Hayes, 393 B.R. at 269;  In re Parrish, 326 B.R. 708, 720-721(Bankr. N.D. Ohio 2005).

In Minnesota, one of many requirements to entitle a party to foreclose is "that the

mortgage has been recorded and, if it has been assigned, that all assignments thereof have been

recorded; provided that, if the mortgage is upon registered land, it shall be sufficient if the

mortgage and all assignments thereof have been duly registered." Minn. Stat. § 580.02 (3); see

also Casserly v. Morrow, 111 N.W. 654, 655 (Minn. 1907) "A party claiming to be the assignee

of a Mortgage must have a legal assignment thereof, duly recorded, before it can foreclose it by

advertisement".

Furthermore, "a mortgage and the Note which it secures are separate and independent

contracts, different in their nature and purpose; as such, the mortgage may be foreclosed even

though an action on the Note is barred."  Lundberg v. Northwestern Nat. Bank of Minneapolis,

216 N.W.2d 121, 123 (Minn. 1974); see also Chomilo v. Shapiro, Nordmeyer & Zielke, LLP,

No. 06-3103, 2007 WL 2695795 at 4-5 (D. Minn.2007) (when an agency's primary business is

foreclosure by advertisement, they are an enforcer of a security interest, not a debt collector).

It would follow that from recent decisions named above, and pursuant to Minnesota

foreclosure law; if the moving party can establish a chain of title from the original mortgagee to

the Movant, standing to bring a Motion for Relief from stay is established.

In the present case, the Mortgage was originally given to New Century Mortgage

Corporation, a California Corporation. [Affidavit in Support of Motion for Relief from Stay; ¶ 4;

Ex. 2].  The Mortgage was then assigned to Deutsche Bank National Trust Company, as Trustee

for the Registered

Holders of New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through

Certificates by written assignment which was recorded on August 11, 2006 as Document No.

3969966, and the Mortgage was then assigned to Deutsche Bank National Trust Company, as

Trustee for New Century Home Equity  Loan Trust, Series 2005-B, Asset Backed Pass-Through

Certificates by written assignment which was recorded on February 21, 2013 as Document No.

4386839.  [Affidavit in Support of Motion for Relief from Stay; ¶ 6; Ex. 3].

       Thus, clearly the Movant has standing to proceed with the Motion for Relief from Stay.

       II.      Authority to Verify

       Foreclosure agents and servicers do not automatically have authority to bring Motions for

Relief.  In re Scott, 376 B.R. 285, 290; (Bankr D. Idaho 2007): In re Hwang, 396 B.R. 757, 767

(Bankr. C.D. Cal 2008).  However, foreclosure agents and servicers can be allowed to show the

authority to act for the party that does.  In re Jacobson, No. 08-45120, 2009 WL 567188 at 5-6

(Bankr. W.D. Wash. Mar. 6, 2009).

       Local Rule 9013-2 (a) requires the moving party to serve and file an affidavit or

verification of the motion, if facts are at issue.  Subsection (d) further clarifies that "[a]ffidavits

shall be made on personal knowledge, set forth only facts that would be admissible in evidence,

and show affirmatively that the affiant or verifier is competent to testify to the matters stated."

LBR 9013.2 (d).

       The affiant in this case is a bankruptcy processor for the authorized servicer of Movant.

The Affidavit made in support of this Motion sets forth the required facts to show that the affiant

has personal knowledge of the facts of this matter. [Affidavit in Support of Motion for Relief

from Stay at ¶¶ 1-3].

Furthermore, the affiant has attached a copy of the Limited Power of Attorney which establishes the authority for Ocwen Loan Servicing, LLC to act on behalf of the Movant in this action. [Affidavit in Support of Motion for Relief From Stay at ¶ 7; Ex. 4].

Accordingly, the affiant has the authority to verify this Motion for Relief from Stay.

III.     Attorneys' Fees

The Minnesota Court of Appeals has held that a mortgage lender is allowed to collect fees in connection with motions to lift the automatic stay under the attorney fee provisions in the mortgage as the motion is the first step in foreclosing or collecting on the Note.  Oleisky v. Midwest Federal Sav. and Loan Ass'n of Minneapolis, 398 N.W.2d 627, 629 (Minn.Ct.App.,1986).  The Mortgage in this case allows for the recovery of Attorneys' fees and costs in connection with foreclosure or collection after default. [Affidavit in Support of Motion for Relief from Stay; ¶ 4; Ex. 2].

Therefore, Movant is entitled to recover the attorneys' fees and costs associated with the filing of this Motion.

IV.     Grounds for Relief from Stay

Under Section 362 (d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "for cause, including the lack of adequate protection of an interest in property of such creditor."  11 U.S.C. Sec. 362 (d) (1).  As of December 4, 2017, the Debtor in this case has failed to make the post-petition payments required by the Note and Mortgage for a period of 3 months.  [Affidavit in Support of Motion for Relief from Stay at ¶¶ 10, 11, 14, 15; Ex. 6, 7].  Debtor has not otherwise provided Movant with adequate protection of its interest in the property.  Such circumstances constitute cause, within the meaning of Section 362 (d) (1), justifying relief from the stay.  In re Video East, Inc.,  41 B.R. 176 (Bankr. E. D. Pa.

1984); In Re Frascatore, 33 B.R. 687 (Bankr. E. D. Pa. 1983). The Debtor's failure to comply

with the Chapter 13 plan is grounds for a bankruptcy court to grant relief from the automatic stay

"for cause." See, e.g. Reinbold v. Dewey County Bank, 942F.2d 1304, 1306-07 (8th Cir. 1991).

The Debtor's confirmed Chapter 13 plan states as follows:

> "6. **HOME MORTGAGES IN DEFAULT [§1322(b) (5) and §1322(e)]** - The trustee
> will cure defaults on the following claims secured only by a security interest in real
> property that is the debtor's principal residence. The debtor will pay the payments that
> come due after the date the petition was filed directly to the creditors. The creditors will
> retain liens. **All following entries are estimates.** The trustee will pay the actual
> remaining balance of amounts of default."

Notwithstanding the foregoing provisions of said plan, the Debtor has not maintained current

payments with respect to said note and mortgage, while this case is pending. The Debtor is

therefore in default under the terms of the confirmed Chapter 13 Plan.

Pursuant to Section 362 (d) (2) of the Bankruptcy Code, relief from the stay is also

appropriate where Debtor has no equity in the subject property and the property is not necessary

to an effective reorganization. 11 U.S.C. Sec. 362 (d) (2). See, In re Gellert, 55 B.R. 970

(Bankr. D. N. H. 1985). In the present case, as of December 4, 2017, the total amount due and

owing to Movant under the terms of the Note and Mortgage was $172,318.83. [Affidavit in

Support of Motion for Relief from Stay at ¶ 13]. Debtor has claimed said mortgaged property as

exempt pursuant to 11 U.S.C. § 522(d)(1). [Debtor's Chapter 13 Bankruptcy Petition; Schedule

C]. The value of the property as averred by the Debtor is $129,600.00  [Debtor's Chapter 13

Bankruptcy Petition; Schedule D]. The current tax assessed value of the property is

$129,600.00, which Movant adopts for purposes of this Motion. [Affidavit in Support of Motion

for Relief from Stay at ¶ 12; Ex. 5]. As such, there is no equity in said property.

V.      Grounds for Relief from Co-Debtor Stay

Under Section 1301 of the Bankruptcy Code, the automatic stay also protects individuals that are liable on the debt along with the debtor.  11 U.S.C. § 1301 (a).  Troy Allen Eastlee executed the Note and Mortgage at issue and is a co-debtor within the meaning of 11 U.S.C. § 1301. [Affidavit in Support of Motion for Relief from Stay at ¶ 4; Ex. 1, 2].  Relief from the co-debtor stay shall be granted upon request of a creditor to the extent that:"  (1) as between the debtor and the individual protected . . . such individual received the consideration for the claim held by such creditor; (2) the plan filed by the debtor proposes not to pay such claim; or (3) such creditor's interest would be irreparably harmed by continuation of such stay."  11 U.S.C. § 1301 (c) (1) - (3).  Troy Allen Eastlee received the benefit of the proceeds from the Note and Mortgage in the amount of $139,200.00, which constitutes consideration for the claim held by Movant.  Neither the Debtor nor the co-debtor has provided for the post-petition payments now due and owing under the modified Chapter 13 Plan.  Movant's ability to proceed with exercising its rights under the Mortgage as to the secured real property will be irreparably harmed by continuation of the stay.  Movant is therefore entitled to relief from the co-debtor stay under Section 1301.

Accordingly, Movant is entitled to an order lifting the stays and authorizing it to

foreclose its Mortgage on the property.


Dated: January 29, 2018

Respectfully submitted,
**SHAPIRO & ZIELKE, LLP**


Signed:/s/ Jessica L. Salyers
Lawrence P. Zielke - 152559
Kalli L. Ostlie - 0329678
Jessica L. Salyers - 0398808
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060
jsalyers@logs.com

17-31498 WJF

<u>CERTIFICATE OF SERVICE</u>

**STATE OF MINNESOTA**        )
                              ) SS
**COUNTY OF DAKOTA**          )

I, Sara Doudrick, declare under penalty of perjury, say that on January 29, 2018, I mailed via U.S. Mail and CM/ECF emailed copies of the Amended Notice of Hearing and Motion for Relief from Stay, Affidavit, annexed Memorandum of Law, Proposed Order for Relief from Stay, and Certificate of Service on the following interested parties at their last known address.

Service Via U.S. Mail

Robert Wayne Eastlee
733 Butternut Ave
St. Paul, MN 55102

Troy Allen Eastlee
733 Butternut Ave
St. Paul, MN 55102

Additional Copy(s) served electronically through the Court's ECF System or by first class U.S. mail postage addressed to:

Attorney for Debtor
Curtis K Walker
Walker & Walker Law Offices PLLC
4356 Nicollet Ave S
Minneapolis, MN 55409

Chapter 13 Trustee
Gregory A Burrell
100 South Fifth Street
Suite 480
Minneapolis, MN 55402

U. S. Trustee
1015 U.S. Courthouse
300 South 4th St.
Minneapolis, MN 55415

<u>/s/ Sara Doudrick</u>
Sara Doudrick

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:

Case No.  17-31498 WJF

Robert Wayne Eastlee,

Debtor.

### ORDER GRANTING RELIEF

This case is before the court on the motion of Deutsche Bank National Trust Company, as

Trustee for New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through

Certificates, for relief from the automatic stay imposed by 11 U.S.C. § 362(a) and codebtor stay

imposed by 11 U.S.C. § 1301.

Based on the records, the court finds that grounds exist under 11 U.S.C. § 362(d) to

warrant relief.

**IT IS ORDERED:**

1.      The motion for relief from stay is granted as follows.

2.      The automatic stay imposed by 11 U.S.C. § 362(a) and codebtor stay imposed by

11 U.S.C. § 1301 are terminated such that the movant may exercise its rights and remedies under

applicable nonbankruptcy law with respect to the following property:

> Lot 12, Block 1, River Side Addition to St. Paul, Minn. According to the
> Recorded Plat Thereof on File and of Record in the Office of the Register of
> Deeds in and for Ramsey County, Minnesota.

3.      Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this order is

effective immediately.

Dated: _____          _____

United States Bankruptcy Judge